UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

- - -

| | |
|---|---|
| UNITED STATES OF AMERICA, | : Docket No. 22-cr-25 |
| Plaintiff, | : Lexington, Kentucky |
| | : Wednesday, April 13, 2022 |
| | : 10:00 a.m. |
| v. | : |
| GREGORY A. EVANS, | : |
| Defendant. | : |

- - -

TRANSCRIPT OF REARRAIGNMENT
BEFORE DANNY C. REEVES
UNITED STATES CHIEF DISTRICT COURT JUDGE

- - -

APPEARANCES:

| | |
|---|---|
| For the United States: | ZACHARY DAVID DEMBO, ESQ.<br>U.S. Attorney's Office<br>260 W. Vine Street<br>Suite 300<br>Lexington, Kentucky 40507 |
| For the Defendant: | BRADLEY D. CLARK, ESQ.<br>Suhre & Associates, LLC<br>333 W. Vine Street<br>Suite 300-19<br>Lexington, Kentucky 40507 |
| Court Reporter: | ELAINE S. HABERER, RPR<br>Official Court Reporter<br>101 Barr Street<br>Lexington, Kentucky 40507<br>(859) 469-7456 |

Proceedings recorded by mechanical stenography, transcript produced by computer.

(Proceedings commenced in open court at 10:01 a.m.)
THE COURT: Madam Clerk, would you call the matter scheduled for 10:00, please?
COURTROOM DEPUTY: Yes, Your Honor.
Lexington Criminal Action Number 22-25, United States of America versus Gregory A. Evans, called for a rearraignment.
THE COURT: Thank you. Would counsel state their appearances?
Mr. Dembo.
MR. DEMBO: Good morning, Your Honor. Zach Dembo on behalf of the United States.
THE COURT: And Mr. Clark.
MR. CLARK: Your Honor, Bradley Clark on behalf of Mr. Evans. This is Mr. Evans, I'll acknowledge his identity. And if I could ask the Court, would the Court prefer Mr. Evans to stand when addressing the Court or should he remain seated?
THE COURT: Does he have any physical limitations that would prevent him from standing?
MR. CLARK: No, Your Honor.
THE DEFENDANT: I can stand.
THE COURT: All right. Then you need to stand when you address the Court.
MR. CLARK: Thank you.
THE COURT: This matter is scheduled for rearraignment. Is Mr. Evans ready to proceed, Mr. Clark?

MR. CLARK: Yes, Your Honor.

THE COURT: All right. Thank you.

Madam Clerk, if you would please administer the oath to the defendant to answer questions.

COURTROOM DEPUTY: Yes, Your Honor.

**GREGORY A. EVANS, Defendant, was duly sworn**

THE COURT: Now, Mr. Evans, would you state your full name, please?

THE DEFENDANT: Gregory Alan Evans.

MR. CLARK: You should stand when you address the Court.

THE COURT: No, Mr. Clark, initially when addressing the Court, yes, but during the colloquy with the Court and his questions, it's not necessary --

MR. CLARK: Just making sure, just trying to show --

THE COURT: All right. Thank you, Mr. Clark.

Mr. Evans, as we begin, let me first remind you that you have just been placed under oath by the clerk. As a result, the answers that you give to the questions I'll be asking you must be truthful. I do need to remind you that if you should fail to give truthful answers, you could be prosecuted for perjury or making a false statement to the Court. Also, any statements that you would make could be used against you in a subsequent proceeding.

Let me briefly describe the way we'll be proceeding this

morning. I'm going to begin by asking you several questions to confirm that you are competent and able to enter a guilty plea in the case.

Also, I want to discuss with you some of the factors that would be considered in imposing a sentence in this matter. I'd also like to discuss with you some of the rights that you'd be waiving or giving up by entering a guilty plea rather than proceeding with a trial before a jury.

If at any point, you feel like you don't understand one of my questions, or if I'm not clear, please stop me and tell me that. If you'll do that, I'll repeat or rephrase the question for you.

Mr. Evans, how old are you?

THE DEFENDANT: I'm 50.

THE COURT: How much education do you have?

THE DEFENDANT: I'm sorry?

THE COURT: How much education do you have? How far did you go in school?

THE DEFENDANT: I completed 8th grade.

THE COURT: Okay. Are you able to read and write okay?

THE DEFENDANT: Yes, sir.

THE COURT: Have you at any point attempted to get a GED?

THE DEFENDANT: I do have a GED.

THE COURT: You do have your GED? All right.
Are you currently receiving any medical treatment or treatment for any mental health issues?
THE DEFENDANT: Mental health, no, sir.
THE COURT: All right. Do you have some medical issues that you're attending to?
THE DEFENDANT: Yes, sir.
THE COURT: All right. Have you ever been treated or hospitalized for any type of a mental illness or mental condition?
THE DEFENDANT: No, sir.
THE COURT: Have you ever been diagnosed as having any mental health issue, and that could include a diagnosis of anxiety or depression?
THE DEFENDANT: No, sir.
THE COURT: Are you under the influence of any type of drugs or alcohol at the present time?
THE DEFENDANT: No, sir.
THE COURT: Now, would you take -- are you taking some medications for medical conditions?
THE DEFENDANT: Yes, sir.
THE COURT: All right. Do those medications affect your ability to understand or to reason with people in any way?
THE DEFENDANT: No, sir.

THE COURT: All right. Can you tell me generally the kind of medications you're taking?

THE DEFENDANT: Heart medication. I've had three heart attacks in the past year.

THE COURT: All right. Do you take nitroglycerin?

THE DEFENDANT: I have it; I take it as emergency only, but --

THE COURT: All right. And can you briefly describe your employment history for me?

THE DEFENDANT: Employment?

THE COURT: Your employment history, how you've been employed over the past few years.

THE DEFENDANT: My background was construction until I moved into corrections, and I was employed in corrections for nine years.

THE COURT: All right. Did you work in the Eastern Kentucky area in construction?

THE DEFENDANT: Madison County.

THE COURT: In Madison County? All right.

Mr. Clark, have you had any problems communicating with Mr. Evans in the case?

MR. CLARK: No, Your Honor.

THE COURT: Do you have any reason to believe that he doesn't understand the charges that have been made against him?

MR. CLARK: No, Your Honor.

THE COURT: And then, do you have any reason to believe that he's impaired such that he could not proceed here this morning with a guilty plea?

MR. CLARK: No, Your Honor.

THE COURT: All right. Thank you.

Mr. Evans, let me confirm that you have received a copy of the indictment that's been filed in this case; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had the opportunity to review the indictment and also to discuss it with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Have you discussed not only the charges that have been made against you, but the case in general with Mr. Clark?

THE DEFENDANT: Yes, sir.

THE COURT: Do you feel like you understand the charges?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with the advice and the representation that your attorney has given you to this point in the case?

THE DEFENDANT: Yes, sir, I am.

THE COURT: Counsel, do you have the signed plea

agreement?

MR. CLARK: Yes, Your Honor.

THE COURT: Mr. Clark, would you bring that up to the clerk together with the supplement, please?

All right. Thank you.

Mr. Evans, I have been given your written plea agreement; it is a seven-page document. On the sixth and seventh pages it has the attorneys' signatures, it also appears to have your signature dated March 24th.

Those same signatures appear on the supplement to the plea agreement. Again, it appears that you signed that document on March 24th as well.

Let me first confirm that this is your signature on both documents and that you signed both documents on the date indicated; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Before signing these documents, did you have the opportunity to review each one?

THE DEFENDANT: Yes, sir.

THE COURT: Did you discuss the documents with Mr. Clark?

THE DEFENDANT: Yes, sir.

THE COURT: Do you feel like you understand the terms and the conditions of your plea agreement as well as the supplement to the plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: If I take these two documents together, do they represent the only agreement that you have with the government in the case?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Now, in just a moment, Mr. Evans, I'm going to ask Mr. Dembo, on behalf of the United States, to review the plea agreement with us. I'm not going to ask him to read it line by line, I'm going to ask him to summarize it. As he does that, I would like for you to listen carefully, because the practice I follow is as soon as he's finished reviewing the document, I'll ask Mr. Clark and then I'll ask you if he's accurately summarized it. So if you could, listen carefully as he does that.

THE DEFENDANT: Okay.

THE COURT: Mr. Dembo.

MR. DEMBO: Thank you, Your Honor.

Paragraph 1 of the plea agreement sets out that pursuant to Federal Rule of Criminal Procedure 11(c) the defendant will enter a guilty plea to Count 1 of the indictment, which charges a violation of 18 United States Code, Section 242, deprivation of rights under color of law. Pursuant to Rule 11(c)(1)(A) the United States will move at sentencing to dismiss Counts 2 and 3.

Paragraph 2 summarizes the essential elements of Count 1

to which the defendant is pleading.

Paragraph 3 establishes the factual basis which the parties agree that the United States could prove beyond a reasonable doubt and that the defendant admits to.

Three consists of subparagraphs (a) through (f).

Paragraph 4 lays out the statutory maximum penalties for Count 1 to which the defendant is pleading.

Paragraph 5 lays out the agreed nonbinding sentencing guideline recommendations that the United States and the defendant agree to.

Paragraph 6 states that there is no agreement about the defendant's criminal history category.

Paragraph 7 says the defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to Section 3B1.2 of the United States sentencing guidelines, or a departure motion pursuant to Chapter 5, Parts H or K of the sentencing guidelines.

In paragraph 8, the defendant waives the right to appeal his guilty plea, conviction, and sentence. And except for claims of ineffective assistance of counsel, the defendant also waives the right to collaterally attack his guilty plea, conviction, and sentence.

Paragraph 9 sets forth the United States will recommend releasing the defendant on his current conditions of release for future court appearances, provided that the defendant does

not violate the terms of the order setting the conditions of release.

In paragraph 10, the defendant agrees to cooperate fully by making a full and complete financial disclosure and completing forms related to that.

Paragraph 11, the defendant understands and agrees that any monetary penalties that are applied by the Court will be due and payable immediately. And lays out how the defendant will cooperate with the United States government to pay those monetary penalties.

Paragraph 11 states that if the defendant violates any part of this agreement, the United States may void it and seek an indictment for any violation of federal law, and the defendant waives the right to challenge the initiation of these federal charges.

Paragraph 12 states that this is the complete -- that this document, as well the supplement, are the complete agreement, and that the United States has not made any other promises to the defendant.

Paragraph 13 states that this agreement is limited to the United States Attorney's Office for the Eastern District of Kentucky and the criminal section of the civil rights division of the U.S. Department of Justice and does not bind any other United States Attorney's Offices or federal, state, or local prosecuting authorities.

And in paragraph 14, the defendant and the defendant's attorney acknowledge that he understands this agreement and his entry into this agreement is voluntary.

THE COURT: All right. Thank you, Mr. Dembo.

And Mr. Clark, did Mr. Dembo accurately summarize the essential parts of the plea agreement?

MR. CLARK: He did, Your Honor.

THE COURT: Mr. Evans, were you able to hear Mr. Dembo as he was reviewing your plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Did he accurately summarize it as you understand it?

THE DEFENDANT: Yes, sir.

THE COURT: Other than what's contained in the plea agreement and the supplement to the plea agreement, have there been any other promises made to you by anyone that have caused you either to sign these documents or to indicate that you wished to enter a guilty plea in the case?

THE DEFENDANT: No, sir.

THE COURT: Has anyone made any threats or in any way forced you to sign these documents or enter a guilty plea in this matter?

THE DEFENDANT: No, sir.

THE COURT: Has anyone told you that you would receive a specific sentence in exchange for entering a plea of

guilty in the case?

THE DEFENDANT: No, sir.

THE COURT: And do you understand that if I accept a plea of guilty from you pursuant to your plea agreement, you would be adjudged guilty of the charge that is contained in Count 1 of the indictment, and you would lose certain valuable civil rights that you have, including the right to vote, the right to hold public office, the right to serve on a jury, and also the right to possess a firearm or any type of a dangerous weapon.

You do understand that?

THE DEFENDANT: Yes, sir.

THE COURT: The statutory penalties are the maximum penalties that could be imposed by law based on what's charged in Count 1. And the statutory penalties are set forth in paragraph 4 of your plea agreement.

Based on the charge contained in Count 1, the Court could impose a term of incarceration of not more than ten years in this case. You could also receive a fine in this matter of not more than $250,000, and a term of supervised release that would be limited to three years; it's not more than three years by statute.

There would also be a $100 special assessment that would be imposed in this matter and it would be due at the time of entry of your plea.

I believe it's paragraph 5 -- actually we have two paragraph 5(g)s, so the second paragraph 5(g) would provide for restitution that would be determined at a later time, at the time of the sentencing hearing; it couldn't be determined at this point.

And do you understand that those are the maximum penalties that could be imposed based on what's charged in the first count of the indictment?

THE DEFENDANT: Yes, sir.

THE COURT: However, you could receive additional penalties if you were to violate any conditions of supervised release to be imposed. The maximum period of incarceration for a supervised release violation, based on what's charged in Count 1, would be not more than two years, but the Court could also reimpose supervision if there were to be a violation. Even if a violation were to occur on the very last day of supervised release, you could receive penalties for that including the Court could reimpose supervision for the term that was originally available, three years of supervision.

Any questions about that?

THE DEFENDANT: No, sir.

THE COURT: All right. If not, then, Mr. Evans, let me talk with you for a moment about some factors that would be considered in imposing the sentence in this case. What I'd like to do is begin by discussing the United States sentencing

guidelines with you and then I'll also talk with you about some other statutory factors that are often considered. So let me first discuss the guidelines.

The United States sentencing guidelines are not binding on district courts. But because the guidelines are considered in imposing sentences, it's important that you understand generally how they operate.

The sentencing guidelines are based upon two primary factors. First is the offense level for the crime or crimes charged, together with any adjustments that might apply. And second would be any criminal history that a person might have. Those factors are taken together and they determine what's called a guideline range.

I find out about those factors as well as the guideline range from a presentence report. That's a report that will be prepared by the probation officer that would be assigned to your case. After the report has been prepared, it will be shown to you and to your attorney and also to the attorney for the United States.

You will all have the opportunity to review the report. And through your attorney, you'll be able to file objections to anything that you might disagree with.

Now, I would need to resolve any objections before we could proceed with the sentencing hearing, but until that process takes place, it would be impossible for the Court or

for your attorney to know exactly what the guideline range would be in this matter.

Now, in this case, the parties have made recommendations about how to calculate that guideline range. Those are only recommendations that would not be binding on the Court. I have an independent obligation to correctly calculate the guideline range, and so if one of these recommendations, if I determine it would be incorrect, then I wouldn't be obligated to impose it or apply it in the case.

Now, in addition to the sentencing guidelines, district courts consider a number of statutory factors in determining what would be an appropriate sentence in the case. Those factors are listed in Title 18 of the United States Code, Section 3553(a).

Now, some of those factors would include the nature and circumstances of the offense, the history and the characteristics of the person that's to be sentenced, the need for the sentence to reflect the seriousness of the offense, the need to promote respect for the law and provide for a just punishment for the offense.

Courts often consider the deterrent effect that the sentence would have and whether there's a need to protect the public from any future crime of the defendant.

There's another factor that's listed in that statutory section that's often considered that relates to

rehabilitation, and it addresses whether a person needs any type of educational or vocational training, any medical care or treatment, or treatment for any addictions that might be present, such as an addiction to drugs or alcohol.

Those last series of factors may be considered not only in determining what would be an appropriate sentence, but also in determining what would be appropriate conditions of supervised release.

Now, there are other factors that are listed in Section 3553(a). Those are some that are often considered, but any that are relevant will be considered and can be argued by the parties in the case.

Now, let me turn back to your plea agreement for just a moment; I want to go through the language in paragraph 8.

In paragraph 8, you've agreed that you would not -- and that you -- excuse me. That you would waive the right to appeal the guilty plea, conviction, and any sentence to be imposed by the Court.

In other words, you wouldn't be able to take a direct appeal to challenge those matters to the United States Court of Appeals for the Sixth Circuit.

There's a limited waiver with respect to your ability to collaterally attack the guilty plea, conviction, and the sentence. When you give up the right to attack collaterally, as that phrase is used in this paragraph, you're giving up the

right to file a separate lawsuit or a separate motion to challenge these matters. Sometimes that would be referred to as a habeas motion or habeas proceeding.

And with one exception, you would not be able to collaterally attack the guilty plea, conviction, and sentence. The exception would be a claim of ineffective assistance of counsel. You could still make that claim in a collateral proceeding, but you would be limited to that claim.

Any questions about any parts of paragraph 8?

THE DEFENDANT: No, sir.

THE COURT: All right. If not, Mr. Evans, let me also point out that ordinarily you would not be able to withdraw your guilty plea or withdraw from your plea agreement if you were dissatisfied with the way in which the guideline range were calculated.

Also, ordinarily you would not be able to withdraw your guilty plea or withdraw from your plea agreement if you were dissatisfied with the sentence in the case as long as the Court imposes a legal sentence.

Also, if you were to be sentenced to a term of incarceration, you wouldn't be released on parole. Parole is not available in the federal system. It is at the state level, but not at the federal level.

Now, let me take a moment, I'd like to discuss with you some of the rights that you'd be waiving or giving up by

entering a guilty plea rather than proceeding to a jury trial.

Before I do that, I want to tell you that if you wanted to continue with the plea of not guilty and proceed to trial, you could do so. You have a right to a speedy, public trial, and any verdict that would be returned would have to be a unanimous decision of a jury composed of 12 persons.

However, you can waive those rights, and you can enter a guilty plea this morning as you've indicated you wished to do. By entering a plea of guilty there are some rights that you do waive or give up. However, there's one right that you do not waive or give up and that is your right to assistance of counsel. You have that right at all stages of this proceeding and you do not lose that right by entering a plea of guilty.

You have the right to hire an attorney, but if you can't afford one, an attorney is provided to you at no cost. But as I indicated, there are other rights that you would waive or give up by entering a plea of guilty rather than proceeding to a jury trial, so let me review those with you.

If the case proceeded to a trial before a jury, you would have the right of confrontation. That simply means you would be able to see, hear, and through your attorney, cross-examine or question any witnesses that might testify against you.

Also, you would be able to have subpoenas issued to compel witnesses to attend trial and testify on your behalf if you wished to call witnesses at trial. By not going to trial,

you don't have that opportunity.

Also, if the case proceeded to trial, you would have the right to remain silent. While you could give up that right and testify, you could not be forced to testify.

In fact, if you decided to proceed to trial but remain silent, the United States could not comment on your silence throughout the course of the proceeding.

Also, at trial, you would be presumed innocent of any charge made against you. Before you could be convicted of a charge, the United States would have the burden of proving the charge to a jury beyond a reasonable doubt. The government's burden at trial is to prove each and every element of any offense charged beyond a reasonable doubt. It carries that burden from start to finish; the defendant does not have a burden to prove anything at trial.

If I do accept a plea of guilty from you, of course, there would not be a trial as we've discussed, and you would waive or give up those rights that I've just described to you.

And you do understand that; correct?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Mr. Evans, let me take a moment to review this first count with you, and after I've gone through this charge I'm going to ask you to tell me in your own words what it was that you did to be guilty of this charge.

There's also some information in your plea agreement I'll go over with you, but before we go back to the factual summary of the plea agreement, I'll ask you to tell me what you did.

Now, Count 1 alleges that on or about April 9th of last year in Madison County, in the Eastern District of Kentucky, that at that time while you were acting under color of law as a deputy jailer at the Madison County Detention Center, you willfully deprived a person identified by the initials E.B., who was a pretrial detainee, of the right protected and secured by the Constitution and laws of the United States, to due process of law, which includes the right to be free from the unreasonable force by a deputy jailer.

Specifically, it's alleged that you assaulted and strangled the individual identified as E.B., resulting in bodily injury to that person, in violation of Title 18 of the United States Code, Section 242.

That's the charge. Can you tell me what it was that you did to be guilty of that charge?

THE DEFENDANT: Yes, sir. On that date, April 9th --

THE COURT: And this was --

THE DEFENDANT: -- due to an incident -- I'm sorry?

THE COURT: That was in Madison County?

THE DEFENDANT: Yes, sir. Due to an incident that was occurring, I had to remove Mr. E.B. from his cell and as we were going down the hallway, I stopped him, detained him,

and had to take him to the ground and caused injury to him.

THE COURT: All right. And at that time, you were a deputized jailer -- a deputy jailer in the Madison County Detention Center?

THE DEFENDANT: Yes, sir.

THE COURT: And at that time you were acting pursuant to your authority as a deputy jailer; is that accurate?

THE DEFENDANT: Yes, sir.

THE COURT: If this case proceeded to a trial before a jury, the government would be required to prove four elements to obtain a conviction for this charge. It would have to show that you were acting under color of law, and that would include, of course, acting as a deputy jailer.

Second, that you deprived the victim of a right secured and protected by the Constitution of the United States, and that would include being free from the unreasonable use of force by an individual acting in an official capacity without due process of law, that your actions were willful, and that the actions resulted in bodily injury to the person that's identified in this case, E.B.

If this case proceeded to a jury trial, do you believe the government could prove those four essential elements beyond a reasonable doubt to obtain a conviction on this count, on this charge?

THE DEFENDANT: Yes, sir.

THE COURT: Your plea agreement also has a factual summary. It's contained in paragraph 3, it has a number of subparts, (a) through (f).

Is the information contained in paragraph 3 and those subparts true and correct?

THE DEFENDANT: Yes, sir.

THE COURT: Is it your intention to enter a guilty plea to this charge because you are, in fact, guilty of the charge and for no other reason?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Dembo, in your opinion, has a sufficient factual basis been stated for the Court to be able to accept a plea of guilty from Mr. Evans to Count 1 of the indictment?

MR. DEMBO: Yes, Your Honor.

THE COURT: Mr. Clark, do you also agree?

MR. CLARK: I do, Your Honor.

THE COURT: And Mr. Evans, what is your plea to Count 1 of the indictment?

THE DEFENDANT: Guilty.

THE COURT: All right. Well, I am satisfied with the responses that you've given me and I will make the following findings in your case at this time.

It is the finding of this Court in the case of the United States of America versus Gregory A. Evans that Mr. Evans is

fully competent and capable of entering an informed plea. Further, his plea of guilty is a knowing and a voluntary plea, which is supported by an independent basis in fact containing the essential elements of the offense that is charged in Count 1. His plea, therefore, will be accepted, he will be adjudged guilty of the offense that is charged in that Count.

The sentencing hearing will be scheduled in this matter for here in Lexington, and subject to intervening orders of the Court, on Friday July 29th, at 10:00 a.m.

Let me check with the attorneys and make sure that there's not a conflict on that date.

Mr. Dembo?

MR. DEMBO: No conflict for the United States, Your Honor.

THE COURT: Mr. Clark, is that clear on your calendar as well?

MR. CLARK: That will work, Your Honor, thank you.

THE COURT: Also, I'll point out to the attorneys the provisions of paragraph 2 of the sentencing order that does require the parties to consult and meet with the probation officer on any relevant factual issues that are in dispute and identify those factual issues for the benefit of the probation officer.

Mr. Evans, I've asked you a lot of questions in this case. Do you feel like you've understood what I've asked to

this point?

THE DEFENDANT: Yes, sir.

THE COURT: You will need to meet with the probation officer that's responsible for preparing the presentence report in this case. You are entitled to have counsel present as you meet with the probation officer. It's always a good idea for you to have your attorney present for that meeting. Mr. Clark may know some things that will need to be pointed out in your favor that you may not think of or you may not think would be very important when they could be. So I do want to make sure you understand you can have counsel present for that meeting.

THE DEFENDANT: Yes, sir.

THE COURT: Let me provide the plea agreement and the sentencing order to the clerk.

And Mr. Dembo, I'll return the supplement to the United States to maintain in its records.

MR. DEMBO: Thank you, Your Honor.

THE COURT: Pursuant to the plea agreement, I believe the parties and the United States are recommending that Mr. Evans remain on the same terms and conditions that were imposed at the time that he initially appeared in this matter before the magistrate judge; is that accurate?

MR. DEMBO: That's correct, Your Honor.

THE COURT: Mr. Evans, make sure that you fully

comply with all of the those terms and conditions. If a person that's on release conditions were to violate any of those conditions, it can have adverse consequences. It can result in the person being detained; it can result in additional charges being filed; and it could also result in -- or it could affect the guideline calculation in the case through loss of acceptance of responsibility.

So, please, if you have any questions, make sure that you speak with your attorney about any limitations that are imposed or that were imposed by the magistrate judge. They do remain in effect. And if you need to speak with the probation officer, don't hesitate to do that as well.

Do you have any questions for me at this time about any of those conditions or any other matters that we've covered today?

THE DEFENDANT: No, sir.

THE COURT: All right. Thank you. Good luck to you.

THE DEFENDANT: Thank you, appreciate it.

THE COURT: And I believe our next hearing is at 11:00 this morning. We'll be in recess.

(Proceedings concluded at 10:31 a.m.)

\- - -

C E R T I F I C A T E

I, ELAINE S. HABERER, RPR, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled case.

_/s/ Elaine S. Haberer
ELAINE S. HABERER, RPR
Official Court Reporter

September 16, 2022
Date of Certification